UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL B. THOMPSON, et al.,<br>　　　　Plaintiffs,<br>　　v.<br>UNITED STATES OF AMERICA,<br>　　　　Defendant. | Case No. 18-cv-01675-JCS<br><br>**ORDER GRANTING MOTION TO DISMISS AND DISMISSING COMPLAINT WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 11 |

## I. INTRODUCTION

Plaintiffs seek to recover from Defendant United States federal income tax that they contend was wrongfully assessed. The United States brings a Motion to Dismiss ("Motion") seeking dismissal of the action pursuant to Rule 12(b)(6). The Court finds that the Motion is suitable for determination without oral argument and therefore vacates the motion hearing set for September 14, 2018 pursuant to Civil Local Rule 7-1(b). For the reasons stated below, the Motion is GRANTED.[1]

## II. BACKGROUND

### A. Factual Background

In the Complaint, Plaintiffs Paul B. Thompson and Kathleen D. Thompson allege that they prematurely withdrew more than a million dollars from their retirement plan, "under imminent threat of levy and lien collection by Field Collections," to satisfy their outstanding 2002, 2003, and 2004 tax liabilities. Complaint ¶ 10. Accordingly, they incurred and paid a $122,784.00 federal income tax penalty for early withdrawal from a retirement plan. *Id.* ¶ 5. They further

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

allege that they paid $1,835.21 in interest and $3,593.52 in late fees associated with the tax penalty. *Id. ¶¶* 6, 13. Plaintiffs allege they were coerced into prematurely withdrawing from their retirement plan by "the imminent threat of levy and lien filing by [IRS] Field Collections." *Id.* ¶¶ 10-12. Plaintiffs further allege that because their withdrawal was "involuntary and coerced," they are not subject to the early distribution penalty under 26 U.S.C. § 72(t)(2)(A)(vii), which provides that distributions made on account of a levy under 26 U.S.C. § 6331 are exempt from the 10% penalty. *Id*. ¶ 12.

According to the Complaint, Plaintiffs filed a claim with the Internal Revenue Service ("IRS") seeking a refund of the penalty they paid, along with accrued interest, but the claim was denied initially and on appeal. *Id*. ¶¶ 7-9 & Exs. A and B (IRS letters denying claim initially and on appeal).

Based on these allegations, the Thompsons assert a claim under 26 U.S.C. §72(t) seeking to recover from the United States the federal income tax "penalty" paid in tax year 2012, plus interest, amounting to $128, 212.73. *Id*. ¶¶ 4-5, 13.

### B. The Motion

In the Motion, the United States argues that Plaintiffs' claim fails, as a matter of law, because there is no allegation in the complaint that their retirement plan was actually levied. Motion at 2. According to the United States, pursuant to 26 U.S.C. § 72(t)(2)(A)(vii), the levy exception to the early withdrawal penalty applies only when the retirement plan has been subject to actual levy. *Id*. The United States further asserts that any notice of intent to levy that may have been issued was not a constructive levy and does not allow Plaintiffs to avoid the 10% penalty under the levy exception. *Id*. at 2-3. Nor is a notice of intent to levy coercive, the United States contends, given that the IRS is legally authorized to assess and collect taxes and there are no allegations that it made any fraudulent threat of prosecution or committed any other misconduct. *Id*. at 5-6.

### III. ANALYSIS

#### A. Legal Standards Under Rule 12(b)(6)

To state a claim for relief, a plaintiff must make "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Further, a claim may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *see also Diaz v. Int'l Longshore and Warehouse Union, Local 13*, 474 F.3d 1202, 1205 (9th Cir. 2007). In determining whether a plaintiff fails to state a claim, the court takes "all allegations of material fact in the complaint as true and construe[s] them in the light most favorable to the non-moving party." *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to legal conclusions [and] mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and courts "do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (internal quotation marks omitted). The complaint need not contain "detailed factual allegations," but must allege facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 678 (citing *Twombly*, 550 U.S. at 570).

### B. Legal Standards Under the Internal Revenue Code

Pursuant to 26 U.S.C.A. § 72(t)(1), "[i]f any taxpayer receives any amount from a qualified retirement plan . . . , the taxpayer's tax . . . for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income." There are exceptions to this requirement, however, including one for distributions "made on account of a levy under section 6331 on the qualified retirement plan" (the "levy exception"). 26 U.S.C. § 72(t)(2)(A)(vii). The levy exception was enacted in 1998, when Congress enacted the Revenue and Restructuring Reform Act of 1998 ("Act of 1998").

Section 6331 governs "Levy and Distraint." It gives the IRS the authority to collect unpaid taxes "by levy upon all property and rights to property" where it has given notice and made a demand for payment of the unpaid taxes and they remain unpaid after ten days. 26 U.S.C. § 6331(a). In order to impose a levy, the IRS must give notice of its intention to levy at least 30 days before the date of the levy. 26 U.S.C. § 6331(d). The notice of intention must "include a brief statement which sets forth in simple and nontechnical terms":

3

   (A) the provisions of this title relating to levy and sale of property,

   (B) the procedures applicable to the levy and sale of property under this title,

   (C) the administrative appeals available to the taxpayer with respect to such levy and sale and the procedures relating to such appeals,

   (D) the alternatives available to taxpayers which could prevent levy on the property (including installment agreements under section 6159),

   (E) the provisions of this title relating to redemption of property and release of liens on property,

   (F) the procedures applicable to the redemption of property and the release of a lien on property under this title, and

   (G) the provisions of section 7345 relating to the certification of seriously delinquent tax debts and the denial, revocation, or limitation of passports of individuals with such debts pursuant to section 32101 of the FAST Act.

26 U.S.C. § 6331(d)(4).

  In addition to the notice of intention to levy required under 26 U.S.C. § 6331(d), the Secretary must also give notice of the right to a hearing before any levy may be imposed. 26 U.S.C. § 6330(a). This notice also must be given at least 30 days before a levy can occur. *Id*. It must contain the following information, also in "simple and nontechnical terms":

   (A) the amount of unpaid tax;

   (B) the right of the person to request a hearing during the 30-day period under paragraph (2); and

   (C) the proposed action by the Secretary and the rights of the person with respect to such action, including a brief statement which sets forth—

    (i) the provisions of this title relating to levy and sale of property;

    (ii) the procedures applicable to the levy and sale of property under this title;

    (iii) the administrative appeals available to the taxpayer with respect to such levy and sale and the procedures relating to such appeals;

    (iv) the alternatives available to taxpayers which could prevent levy on property (including installment agreements

4

> under section 6159); and
>
> (v) the provisions of this title and procedures relating to redemption of property and release of liens on property.

26 U.S.C. §§ 6330(a)(3).

### C. Discussion

Plaintiffs contend the Motion should denied because they have alleged that the withdrawal from their retirement plan "was involuntary and coerced and therefore not subject to premature withdrawal penalty, under Sec. 72(t)(2)(A)(vii)" and that this is all that is required at the pleading stage of the case. Opposition at 2. According to Plaintiffs, any further questions regarding the applicability of the levy exception are factual issues that should not be addressed until after discovery has occurred. Plaintiffs' argument is based on an incorrect understanding of Rule 12(b)(6), which requires that a complaint allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court finds that Plaintiffs have not met this standard.

In their complaint, Plaintiffs invoke the levy exception contained in 26 U.S.C. § 72(t)(2)(A)(vii) in support of their assertion that they are entitled to a refund of the penalty they paid for early withdrawal of funds from their retirement fund. They do not, however, allege in the complaint that the distribution of those funds resulted from an *actual* levy. Nor do they state in their opposition brief that they could allege as much. Rather, Plaintiffs state in their Opposition brief (though not in their complaint) that the IRS "took all the legally required steps to *set in motion a levy*, issuing Final Notices/Notices of Intent to Levy on December 12, 2012." Opposition at 3 (emphasis added). Plaintiffs contend the IRS "intended to file a potentially ruinous Notice of Federal Tax Lien at an early time" and that this posed a "threat to Mr. Thompson's business, his livelihood and his ability to generate funds sufficient to pay the balance of the liability over time." *Id*. Under these circumstances, they argue, the withdrawal was not voluntary and therefore, under *Murillo v. C.I.R.*, 75 T.C.M. (CCH) 1564 (T.C.), aff'd sub nom. *Murillo v. Comm'r*, I.R.S., 166 F.3d 1201 (2d Cir. 1998), it did not trigger the penalty. Plaintiffs' reliance on *Murillo* is misplaced.

In *Murillo*, the United States Tax Court found that a distribution from a qualified

retirement fund that resulted from a forfeiture order did not trigger the penalty because it was involuntary. *See Murillo v. C.I.R.*, 75 T.C.M. (CCH) 1564 (T.C.), aff'd sub nom. *Murillo v. Comm'r*, I.R.S., 166 F.3d 1201 (2d Cir. 1998). There, the petitioner was charged with various financial crimes, including structuring cash deposits into bank accounts to avoid Federal currency transaction reporting requirements. *Id*. at *1. In a related civil proceeding, all funds on deposit in various accounts owned by the petitioner, including a qualified retirement fund, were forfeited to the United States. *Id*. at *1-2. The question before the court was whether petitioner was required to pay the 10% early distribution penalty under 26 U.S.C. § 72(t). The court concluded that he was not, pointing to the fact that the petitioner "neither received nor had control of the use of the [retirement account] distributions" and that it was the decree of forfeiture that triggered the withdrawals. *Id*. at *4. Under these circumstances, the court found that imposition of the penalty would not further the purpose of the early withdrawal penalty, which was intended to "prevent the diversion of [retirement account] funds to nonretirement uses and to recapture a measure of the tax benefits that have been provided." *Id*. The court further concluded that "the circumstances surrounding the plea agreement were [not] such as to impart a 'voluntary' patina to the [retirement fund] withdrawals" and that the petitioner had "no realistic choice" as to the distribution. *Id*. at *4.

The court in *Murillo* relied, in part, on its prior decision in *Laratonda v. Commissioner of Internal Revenue*, 89 T.C. 287, 292 (1987). *Laratonda* addressed whether a distribution from a qualified retirement account that occurred as the result of a levy triggered the 10 percent penalty. In that case, "the funds were withdrawn pursuant to [the IRS's] levy, an involuntary act, without any active participation by petitioner." 89 T.C. 287, 292 (1987). The court found that imposition of the penalty under those circumstances would be inconsistent with Congressional intent because in adopting the 10% penalty "Congress intended to prevent the voluntary, tax motivated withdrawal of funds by taxpayers prior to retirement age." *Id*.

Plaintiffs rely on the court's emphasis on the involuntary nature of the withdrawals in *Murillo* and *Laratonda* in support of their assertion that they have stated a valid claim. Yet the limited facts alleged here are distinguishable from both *Murillo* and *Laratonda* in a crucial

6

respect. Here, Plaintiffs' retirement account was not, in fact, levied and the distribution was triggered not by any act of the IRS but by Plaintiffs' own acts. In other words, Plaintiffs *were* actively involved in the distribution.

Further, the legislative history makes clear that when Congress enacted the levy exception, in 1998 (after *Laratona* and *Murillo* were decided) it did not intend to include situations in which a withdrawal is made to avoid an impending levy that has not yet occurred. The Senate report that accompanied the levy exception stated as follows:

> The provision provides an exception from the 10-percent early withdrawal tax for amounts withdrawn from any employer-sponsored retirement plan or an IRA that are subject to a levy by the IRS. *The exception applies only if the plan or IRA is levied; it does not apply, for example, if the taxpayer withdraws funds to pay taxes in the absence of a levy*, in order to release a levy on other interests, or in any other situation not addressed by the express statutory exceptions to the 10-percent early withdrawal tax.

Internal Revenue Serv. Restructuring & Reform Act of 1998, 1998-3 C.B. 537 (I.R.S. 1998) at *66 (emphasis added).

Finally, the tax court's more recent decision in *Willhite v. C.I.R.*, 98 T.C.M. (CCH) 470 (T.C. 2009), supports the conclusion that Plaintiffs have not sufficiently alleged a claim under the levy exception. In that case, the court found that where the petitioner had withdrawn funds from a qualified retirement account after receiving various notices of intent to levy under 26 U.S.C. § 6331(d), the withdrawal did not fall within the levy exception. The court in *Wilhite* distinguished *Larotonda* and *Murillo* on the basis that the petitioner "initiated, received, and controlled" the early retirement account distribution. *Id*. at *5. It also found that the notices of intention that had been issued under § 6331(d) were not sufficient to show that the petitioner had no other choice but to withdraw the funds to pay back his taxes, pointing out that there was nothing in the record reflecting that a notice of the petitioner's right to a hearing had been issued under Section 6330(a); because such a hearing is a prerequisite to a levy, the Commissioner could not yet levy the petitioner's assets to satisfy unpaid tax liability. *Id*.

Here, the facts alleged in the complaint establish that there was no levy on Plaintiffs' retirement account and that Plaintiffs themselves initiated the withdrawal to pay their outstanding taxes. Under all of the cases discussed above, these allegations do not support a plausible

7

inference that the levy exception applies to the early withdrawal of funds from Plaintiffs' retirement account to satisfy their outstanding tax obligations.

The Court need not decide at this juncture whether Plaintiffs might be able to state a claim based on allegations that the withdrawal was involuntary and coerced for reasons other than the fact that the IRS had *set in motion a levy*. To the extent that *Murillo* remains good law – and the tax court's discussion of it in *Willhite* suggests that it does – there may be circumstances other than a levy (for instance, a forfeiture) where a withdrawal is involuntary and therefore does not trigger the 10% penalty under § 72(t). Plaintiffs have not alleged any facts in their complaint, however, that support a plausible inference that any such exception applies here. Nor would the statements in Plaintiffs' opposition brief concerning the "ruinous" consequences of a levy, if they were alleged in the complaint, cure this defect in light of the case law and legislative history discussed above. Accordingly, the Court finds that Plaintiffs have failed to state a claim pursuant to Rule 12(b)(6).

Having found that Plaintiffs' complaint fails to state a claim, the Court dismisses the complaint. Because the Court cannot say for sure based on Plaintiffs' bare-bones complaint that the deficiencies identified herein cannot be cured, Plaintiffs will be given leave to file an amended complaint. *See Saul v. United States*, 928 F.2d 829, 848 (9th Cir. 1991) (finding that "a district court does not err in denying leave where the amendment would be futile").

**IV. CONCLUSION**

For the reasons stated above, the Motion is GRANTED. Plaintiffs' complaint is dismissed with leave to amend. Plaintiffs may file an amended complaint no later than **September 28, 2018.**

**IT IS SO ORDERED.**

Dated: August 30, 2018

JOSEPH C. SPERO
Chief Magistrate Judge